IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLES VOLKERS and<br>JOYCE JOPLIN,<br><br>Plaintiffs,<br><br>vs.<br><br>LAURA JOHNSON, *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)  Case No. 25-cv-184-RJD<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**[1]

This matter comes before the Court on Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 52). For the reasons explained below, the motion is **GRANTED**, and this case is **DISMISSED without prejudice**.

### Introduction

Plaintiffs Charles Volkers ("Volkers") and Joyce Joplin ("Joplin") filed their *pro se* civil rights action against Defendants, Laura Johnson, Erin Schaub, and Johnnie Wilson, on February 6, 2025. (Doc. 3). Defendant Schaub filed a Motion to Dismiss the Complaint (Doc. 9), and in response, Volkers and Joplin filed their First Amended Complaint. (Doc. 11). Defendants then each filed Motions to Dismiss Plaintiffs' First Amended Complaint. (Docs. 17, 22, 26). With the Court's leave, Plaintiffs filed a Second Amended Complaint on February 6, 2026. (Docs. 47 & 48).

In their Second Amended Complaint, Plaintiffs raise five claims, including three claims of due process violations under the Fourteenth Amendment, a Fourth Amendment claim of

---

[1] This matter has been assigned to the undersigned through the parties' consent. (Doc. 28).

unreasonable seizure of children, and a substantive due process claim under the Fourteenth Amendment for interference with familial relationship. (Doc. 48). All claims are directed to "all Defendants." Plaintiffs' claims arise out of an investigation by the Department of Children and Family Services ("DCFS") involving Plaintiff Joyce Joplin and her minor children that was initiated on October 22, 2022. (Doc. 48, p. 1).

Plaintiffs allege that the investigation remained open beyond sixty days, that Defendants did not identify any emergency or exigent circumstances requiring immediate removal, and that any medical or related concerns cited by DCFS were addressed by Plaintiffs prior to the court involvement. They accuse Defendants of proceeding with the "removal" without first attempting any "less restrictive means." Plaintiffs go on to allege that DCFS placed Plaintiff on services, including intact services, prior to adjudication. (Doc. 48, p. 2). Plaintiffs were allegedly told that "waiving adjudication would result in the return of their children at disposition," and were never advised that the services could end up in "prolonged removal" without adjudication. (Doc. 48, p. 2). Relying on that representation, Plaintiffs waived adjudication. They allege that the juvenile court accepted the waiver without a meaningful review. "Contrary to what Plaintiffs were told, the children were not returned at disposition," and Defendants allegedly continued removal without adjudication.

Due to the waiver, Plaintiffs claim they were not allowed to "contest allegations" at the subsequent hearings. (Doc. 48, p. 3). At disposition, Joplin "was told to sign custody of her daughters over to their biological fathers." (Doc. 48, p. 3). Joplin initially refused to do so but was "warned that refusing would open a 'can of worms,'" which Joplin perceived as a threat. Joplin's appointed counsel then "left the courtroom," at which time Joplin signed the document out of fear of retaliation and against her will. Joplin alleges that the juvenile court did not inquire into the

voluntariness of her consent. As a result, Plaintiffs suffered prolonged separation from their children, emotional distress and mental anguish, financial losses associated with services, as well as stigma and reputational harm.

Plaintiffs finally allege that during a permanency hearing on January 5, 2024, allegations concerning Joplin's vehicle being present at John Moore's residence "were raised and addressed on the record." (Doc. 48, p. 5). Joplin testified regarding her past contact with Moore and denied being in an ongoing romantic relationship. At a subsequent April 5, 2024, hearing, Defendant Johnson again referenced the same vehicle allegations and described Joplin as continuing a relationship with Moore.

## **Discussion**

### ***Legal Standard***

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal if a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint and draws all possible inferences in favor of the plaintiff. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quotations omitted). A plaintiff need not set out all relevant facts or recite the law in his or her complaint; however, the plaintiff must provide a short and plain statement that shows that he or she is entitled to relief. *See* Fed. R. Civ. P. 8(a)(2). Thus, a complaint will not be dismissed if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the same time, the plaintiff's allegations cannot be "merely conceivable or speculative," and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Randstad HR Sols. of Delaware*

*LLC*, No. 23-2455, 2025 WL 400728, at *2 (7th Cir. Feb. 5, 2025) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atlantic Corp.*, 550 U.S. at 558. Deciding the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 679)).

Further, under Rule 9 of the Federal Rule of Civil Procedure, a plaintiff who alleges fraud or mistake, "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Thus, a plaintiff must "describe the 'who, what, when, where, and how' of the fraud[.]" *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)). The requirement of particularity is not limited to claims of fraud, but it also applies to claims "premised upon a course of fraudulent conduct." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007).

Further, to state a § 1983 claim, the plaintiff must allege that each defendant was personally involved in the deprivation of a constitutional right. *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation"); *see also Pepper v. Village of Oak Park*, 430 F.3d 806, 810 (7th Cir. 2005) ("[T]o be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation."). Merely naming an individual or entity in the caption of a complaint is insufficient to state a claim against that individual. *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Moreover, respondeat superior liability is not available in § 1983 claims, and a defendant

cannot be held liable simply by occupying a supervisory position. *See Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

While pro se pleadings are subject to a less stringent standard than those of a represented party, "even pro se litigants must comply with court rules and directives." *Lyon v. Brown*, 151 F.3d 1033 (7th Cir. 1998) (citing *Downs v. Westphal*, 78 F.3d 1252, 1257 (7th Cir. 1996) ("being a pro se litigant does not give a party unbridled license to disregard clearly communicated court orders," or to "choose which of the court's rules and orders it will follow").

**<u>Procedural Due Process Claims (Counts I, II & IV)</u>**

In Counts I, II, and IV of the Second Amended Complaint, Plaintiffs attempt to raise procedural due process claims under the Fourteenth Amendment. The Fourteenth Amendment protects against the deprivation of constitutionally protected interests without due process of law. *Brokaw v. Mercer County*, 235 F.3d 1000, 1020 (7th Cir. 2000). The right to familial relations is a protected liberty interest. *Id.* Both parental rights and a child's right to be nurtured by his parents cannot be denied "without an opportunity to be heard in a meaningful way." *Id.*, citing *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed. 2d 18 (1976). The amount of due process required varies with the situation and is a "flexible" concept, but, at minimum, due process "requires that government officials not misrepresent the facts in order to obtain the removal of a child from his parents." *Brokaw,* 235 F.3d at 1020. Further, government officials may only remove a child from his home "without a pre-deprivation hearing and court order if the official has probable cause to believe that the child is in imminent danger of abuse." *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 486 (7th Cir. 2011). This requires a showing of exigent circumstances for the child's removal. *Id.* A probable cause to believe that the child was abused or neglected in the past or is in a general danger of future abuse or neglect is insufficient. *Id.*

In Count I, Plaintiffs allege that Defendants "induced a waiver of adjudication through material misrepresentations, failing to advise Plaintiffs of the consequences of waiver, and continuing removal of the children without adjudication." (Doc. 48, p. 6). In Count II, Plaintiffs allege that Defendants "continued to restrict Plaintiff's custody and parental rights without adjudication, findings of unfitness, or exigent circumstances." (Doc. 48, p. 7). Count IV is substantially duplicative of Count I in that Plaintiffs reassert their procedural due process claim based on Defendants' alleged material misrepresentations concerning the "status of the case, the consequences of waiver, and alleged ongoing risks." (Doc. 48, p. 8).

The Court agrees with Defendants that Counts I, II, and IV fail to state a claim. First, nowhere in the Second Amended Complaint do Plaintiffs explain any of the Defendants' role in DCFS's investigation or even their relationship with DCFS. Plaintiffs state that "Defendants acted under color of law," but this is a conclusion of law that does not suffice to state a claim for relief. *See Trujillo v. Rockledge Furniture LLC*, 926 F.3d 395, 397 (7th Cir. 2019) ("conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth"). Plaintiffs argue in their response to the motion that Defendants acted within their respective roles as investigator, caseworker, and supervisor. (Doc. 56, p. 1). But those allegations are not included in the Second Amended Complaint, and therefore, the Court cannot consider them in ruling on the motion to dismiss.

Further, while Counts I and IV of the Second Amended Complaint state that Defendants "induced a waiver of adjudication through material misrepresentations, failing to advise Plaintiffs of the consequences of waiver, and continuing removal of the children without adjudication," and that Defendants made material misrepresentations regarding the status of the case and the ongoing risks, those allegations are not specific enough to satisfy the requirements of Rule 9(c). The

Seventh Circuit has explained that Rule 9(b), which applies to claims premised upon the course of intentional misrepresentation, requires the plaintiff to allege "the who, what, when, where, and how"—in detail. *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990). "[T]he reference to 'circumstances' in the rule requires the plaintiff to state 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Vicom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 777 (7th Cir. 1994). Here, the Second Amended Complaint fails to set forth allegations regarding the identity of the specific Defendants who made the alleged misrepresentations, the time and place of the misrepresentations, as well as the way that they were communicated to Plaintiffs. Accordingly, it does not satisfy the heightened pleading standard of Rule 9(b).

Likewise, Plaintiffs do not identify or plead who told Plaintiff Joplin to sign custody of her daughters over to their biological fathers, who remained in the courtroom after Ms. Joplin's lawyer departed, and who threatened her with retaliation or further adverse court action. (Doc. 48 ¶¶ 18, 20-21, 24-25). Plaintiffs do not identify any statements or non-statements that can be directly attributed to any of the Defendants.

Notably, the Second Amended Complaint does not set forth any allegations as to Plaintiff Volkers' relationship with the minor children. It states that "DCFS initiated an investigation involving Joyce Joplin and her minor children," and that "Joplin was told to sign custody of her daughters over to their biological fathers." (Doc. 48, pp. 1, 3). Yet, there is no reference to any familial relationship between Joplin's two minor children and Volkers to establish his standing to bring the constitutional claims arising from DCFS's investigation and removal of the minors. *See Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S.Ct. 2162, 2167, 156 L.Ed. 2d 162 (2003) ("right to

maintain certain familial relationships, includ[es] association among members of an immediate family and association between grandchildren and grandparents").

Accordingly, the lack of factual detail warrants dismissal of Counts I, II, and IV of the Second Amended Complaint for failure to state a claim.

**Substantive Due Process Claim (Count V)**

In Count V, Plaintiffs attempt to assert a substantive due process claim under the Fourteenth Amendment for Defendants' "interference with Plaintiff's fundamental right to family integrity." (Doc. 48, p. 9). The Seventh Circuit has recognized that substantive due process of the Fourteenth Amendment encompasses the "right to familial integrity in the context of action by child protective services." *Gilbank v. Wood Cnty. Dep't of Hum. Servs.*, 111 F.4th 754, 788 (7th Cir. 2024), *cert. denied*, 145 S.Ct. 1167, 221 L.Ed. 2d 250 (2025) (quoting *Sebesta v. Davis*, 878 F.3d 226, 233 (7th Cir. 2017)). That right, however, is not unlimited and "must be weighed against the state's interest in protecting children from harm." *Id.* Caseworkers may lawfully take a child into protective custody or otherwise interfere with familial integrity when there is "some definite and articulable evidence giving rise to a reasonable suspicion of past or imminent danger of abuse." *Id.* (internal quotation marks omitted) (quoting *Xiong v. Wagner*, 700 F.3d 282, 291 (7th Cir. 2012)). "Reasonable suspicion" requires that the state actors have "more than a hunch but less than probable cause." *Id.*

As with Plaintiffs' procedural due process claims, the Second Amended Complaint fails to assert allegations showing how each Defendant interfered with Plaintiffs' rights to familial integrity. Plaintiffs state that DCFS initiated the investigation involving Joplin's minor children and that Defendants did not identify any emergency or exigent circumstances. However, Plaintiffs do not explain the Defendants' relationship with DCFS or their involvement in the investigation

and removal of the minors.

Plaintiffs' sole reference to a specific Defendant's involvement in the alleged constitutional violation is the discussion of Defendant Johnson's testimony at the permanency hearings on January 5, 2024, and April 5, 2024. (Doc. 48, p. 5). Yet, this reference is insufficient to state a claim against Johnson. While Johnson's relationship with DCFS is unclear from Plaintiffs' allegations, to the extent Defendant Johnson is a DCFS employee, her testimony at the permanency hearing is likely protected by absolute immunity. *See Millspaugh v. County Department of Public Welfare*, 937 F.2d 1175–76 (7th Cir. 1991) (explaining that social workers pursuing a child-custody case act like prosecutors and witnesses and are protected by absolute immunity for their in-court conduct, including testimonies in ex parte proceedings).

Accordingly, Plaintiffs fail to state a substantive due process claim under the Fourteenth Amendment for interference with familial integrity against any of the Defendants.

**Unreasonable Seizure of Children (Count III)**

Plaintiffs also attempt to raise a claim under the Fourth Amendment for the unreasonable seizure and continued retention of the minors without probable cause or exigent circumstances. As explained above, Plaintiffs fail to state a claim in that they do not assert factual allegations from which to infer each individual Defendant's personal involvement in the alleged constitutional violation. In any case, however, this claim cannot proceed on one additional ground. While Plaintiff Joplin's minor children could bring a constitutional claim under the Fourth Amendment for their initial seizure and the continued withholding, Plaintiffs, who were not the individuals seized, can only prevail under substantive due process for interference with a familial relationship. *See Hernandez*, 657 F.3d at 474 (explaining that in this context, the seized child has a Fourth Amendment claim, while his or her parents have a substantive due process claim for interference

with familial relationship); *Doe v. Heck,* 327 F.3d 492, 519 n.23 (7th Cir. 2003), *as amended on denial of reh'g* (May 15, 2003) (holding that a child's constitutional claim grounded on his seizure is properly analyzed under the Fourth Amendment rather than substantive due process unless it is alleged that the seizure "coincided with other conduct amounting to an interference with the parent-child relationship"). Accordingly, Plaintiffs cannot bring a Fourth Amendment claim under their names for the unreasonable seizure and continued retention of the minor children. Count III should also be dismissed for failure to state a claim.

Because Plaintiffs fail to state a claim for relief under any of the counts included in the Second Amended Complaint, this action is **DISMISSED without prejudice**. Plaintiffs, however, are granted leave to file a third amended complaint to cure the deficiencies of the Second Amended Complaint. Plaintiffs' third amended complaint is due **June 8, 2026**.

## Failure to Include a Prayer for Relief

Defendants further point to Plaintiffs' failure to include a prayer for relief in the Second Amended Complaint. Defendants correctly note that, under Rule 8(a)(3) of the Federal Rules of Civil Procedure, the complaint must include "a demand for the relief sought." Fed. R. Civ. P. 8(a)(3). The Seventh Circuit, however, has explained that mere failure to specify the relief to which a plaintiff is entitled does not necessarily "warrant dismissal." *Godfrey v. Easton*, 702 F. App'x 469, 471 (7th Cir. 2017) (noting that a "prevailing party may obtain any relief to which he's entitled even if he has not demanded such relief in [his] pleadings") (citations and quotation marks omitted). Here, the Second Amended Complaint alleges the damages that Plaintiffs suffered as a result of Defendants' alleged unconstitutional conduct, including monetary damages. Further, in their response to the motion, Plaintiffs argue that they are proceeding against Defendants in their individual capacities. Accordingly, the Court assumes that Plaintiffs only seek monetary

damages—not injunctive relief.

However, if Plaintiffs decide to file an amended complaint, they shall carefully review Rules 8 and 9 of the Federal Rules of Civil Procedure to ensure compliance with the pleading requirements, including the inclusion of a prayer for relief.

### Conclusion

For these reasons, Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint (Doc. 52) is **GRANTED**. The Second Amended Complaint (Doc. 48) is **DISMISSED without prejudice**. Plaintiffs are granted leave to file a third amended complaint by **June 8, 2026**. Failure to do so shall result in dismissal of this action with prejudice for failure to comply with a court order and/or for failure to prosecute these claims. Fed. R. Civ. P. 41(b); *Ladien v. Astrachan*, 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga*, 34 F.3d 466 (7th Cir. 1994).

Plaintiffs are further advised that, if they choose to submit an amended complaint, the Court will not accept piecemeal amendments. An amended complaint supersedes and replaces the original complaint and renders the original void. *Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004). Therefore, the amended complaint must stand on its own, without reference to any previous pleading.

**IT IS SO ORDERED.**

**DATED: May 7, 2026**

*s/ Reona J. Daly*
**Reona J. Daly**
**United States Magistrate Judge**